O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JEFFERY THOMPSON, | ) | Case No. CV 07-08048-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jeffery Thompson seeks judicial review of the Commissioner's denial of his application for Supplemental Security Income ("SSI") benefits under the Social Security Act. For the reasons stated below, the matter is remanded for an award of benefits.

**I. Facts and Procedural History**

Plaintiff was born on June 4, 1947. He is currently 61 years old and he has a college education. (Administrative Record ("AR") 45-46; Joint Stip. 1-2.) Plaintiff's work history includes positions as an adult education teacher and counselor, though Plaintiff has not been

gainfully employed since 1990. (AR 149-50.) Plaintiff filed an application for SSI benefits on November 14, 2005, alleging a disability onset date of January 1, 1990, due to bipolar disorder and depression. (Joint Stip. 1.) The Commissioner denied Plaintiff's application on March 21, 2006, (AR 53-57), and again on October 18, 2006, upon reconsideration. (AR 63.) Administrative Law Judge ("ALJ") Zane Lang held a hearing on July 26, 2007, at which Plaintiff testified and was represented by counsel. (AR 11.) A vocational expert also testified at the hearing.

After applying the five-step sequential analysis mandated by the Social Security Regulations,[1] the ALJ concluded that Plaintiff was not disabled and denied his application for SSI benefits on August 1, 2007. (AR 23.) The ALJ found that Plaintiff's bipolar disorder was severe under the regulations, but did not meet or equal any listed impairment. (AR 13-18.) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, with nonexertional limitations as follows:

> He would have no limits for understanding, remembering, and carrying out simple instructions, but he would not be able to follow detailed or complex instructions. He would have no limits for making simple judgments or work-related decisions. He would not be able to make detailed or complex judgments or

---

[1] The five steps are as follows: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

> decisions. He could have no contact with the public. He could have occasional contact with supervisors and coworkers. He would not be able to work at unprotected heights. He would not be able to work under hazardous conditions. He would need to work in a job environment with less than occasional changes in the environment, where these changes are only simple in character.

(AR 18.)

In reaching this decision, the ALJ gave no probative weight to the treating physician's opinion that Plaintiff was unable to work. (AR 21.) The ALJ further found that although Plaintiff had no past relevant work to which he could return, he relied on the vocational expert's testimony in concluding that Plaintiff could work as a cleaner, brick and tile setter, or a harvest worker. (AR 23.) The ALJ thus determined that Plaintiff was not disabled as defined by the Social Security Act at any time through the date of the decision. (*Id.*)

The Social Security Administration Appeals Council denied Plaintiff's request for review on October 15, 2007, and Plaintiff filed this action on December 19, 2007. Plaintiff alleges that the ALJ erred by improperly discounting Plaintiff's credibility and giving insufficient weight to the treating physician's opinion in reaching the RFC determination. (Joint Stip. 3.) Plaintiff asks this Court to remand for a new administrative hearing. (Joint Stip. 17.)

**II. Standard of Review**

The Court must uphold the Social Security Administrations's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528

F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

  **A. The ALJ Improperly Discounted Plaintiff's Credibility**

  Plaintiff contends that the ALJ's reasons for discounting his credibility were improper. (Joint Stip. 7.) The Court agrees and finds that the ALJ's credibility determination was legally erroneous.

  Where an individual's claimed functional limitations and restrictions due to the alleged symptoms are reasonably consistent with objective medical and other evidence in the case, the ALJ must credit the claimant's allegations. SSR 96-7p, 1996 WL 374186, at * 2 (S.S.A. July 2, 1996) (explaining 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). Though the ALJ need not believe the claimant's every allegation of pain or other symptoms, the ALJ must provide clear and convincing reasons for discrediting a claimant's complaints. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th

Cir. 2006). The ALJ must "state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

At the hearing, Plaintiff testified that his bipolar disorder prevented him from working due to his significant difficulties with anger management, concentration, and short-term memory loss, and he expressed an inability to appropriately socialize with others. (AR 433.) Plaintiff testified that he sleeps very little at night and suffers from fatigue during the day, and that he has frequent mood swings between manic and hostile states. (AR 435-37.) Plaintiff stated that he takes Topomax, which "smooth[es] the rough edges of the manic state somewhat," though he still experiences the manic state frequently. (AR 435.) Plaintiff also believes Topomax causes his memory loss. (AR 437.) Plaintiff denied any history of drug or alcohol abuse. (AR 429-30.)

In reaching the disability determination, the ALJ concluded that Plaintiff's characterization of his limitations was not credible. (AR 20.) The ALJ gave the following reasons for his conclusion: (1) a sheriff's department physician noted that Plaintiff had an extensive drug history that Plaintiff subsequently denied, which suggested to the ALJ that Plaintiff was untruthful; and (2) Plaintiff failed to comply with treatment and informed a physician that he did not need treatment, indicating that he was not significantly impaired.[2] (AR 20-21.) The Court

---

[2] The ALJ questioned Plaintiff's credibility on other grounds when he evaluated Plaintiff's impairment at step three, stating, for example, "[T]he claimant's claims of difficulties for social functioning have not been consistent with his conduct." (AR 17.) However, the ALJ gave Petitioner "the benefit of the doubt" and did not raise these issues in his credibility determination at step four. Accordingly, the Court will not consider these issues as part of the ALJ's credibility determination.

5

will address each of these conclusion in turn.

### 1. Plaintiff's Alleged Substance Abuse

The ALJ's determination that Plaintiff abused drugs and alcohol is based entirely on an initial mental health assessment completed by the Los Angeles County Sheriff's Department on August 2, 2004. (AR 20, 263-265.) In that assessment, Perry P. Zuckerman, M.D., diagnosed Plaintiff with substance-induced psychotic disorder, substance-induced mood disorder, and bipolar disorder, rule out bipolar-manic or mixed, psychosis due to head trauma, and vascular pathology. (AR 264.) Dr. Zuckerman indicated that Plaintiff had used alcohol, cocaine, amphetamine, hallucinogens, PCP, and marijuana/hashish in the past year, and that he had previously used inhalants. (AR 263, 265.) The ALJ noted that Plaintiff later repeatedly denied ever having used drugs. (AR 20.)

The ALJ concluded that Dr. Zuckerman's report was accurate and that Plaintiff's subsequent denials of drug use were untruthful. The ALJ stated, "The claimant's substance use, and his denial of substance use, is adverse to his credibility." (AR 20.) The ALJ also suggested that symptoms Plaintiff claimed to experience from his mental impairment may in fact have arisen from his illicit drug use. (*Id.*)

With the notable exception of Dr. Zuckerman's report, absolutely nothing in the record supports the conclusion that Plaintiff used drugs. Although the ALJ acknowledged that Plaintiff denied using drugs after Dr. Zuckerman's report, the ALJ did not discuss the fact that Plaintiff denied using drugs in every report in the record *except* Dr. Zuckerman's, both before and after his visit with Dr. Zuckerman on August 2, 2004. Reports from June 30, 2004 (AR 248), July 1, 2004 (AR 266), March 7, 2005 (AR 388), September 9, 2005 (AR 207), January 20, 2006 (AR 275), August 4, 2006 (AR 411), and August 29, 2006 (AR 361), all include

Plaintiff's denials of any drug use. Further, an examining state agency psychiatrist's report, which characterized Plaintiff as a "reliable historian," mentioned illegal drugs only once when noting Plaintiff's denial of using them. (AR 274-75.) The psychiatrist expressed no hint that he suspected Plaintiff of being untruthful or that his symptoms could have arisen from drug use.

Perhaps most importantly, the ALJ completely overlooked not one but two negative drug screens in the record. On September 11, 2005, Plaintiff tested negative for amphetamines, barbiturates, benzodiazepines, cocaine, opiates, and PCP. (AR 223.) A prior drug screen was given by the Los Angeles County Sheriff's Department on August 3, 2004, the day after Dr. Zuckerman's report. At that time, Plaintiff tested negative for marijuana, benzodiazepines, cocaine, opiates, and PCP, all but one of which Dr. Zuckerman listed as a probable cause of Plaintiff's mental impairments. (AR 258, 264-65.) The ALJ did not even mention these negative drug tests in his decision.

Furthermore, when Plaintiff sought review of the ALJ's decision by the Appeals Council, he included two letters to support his claim that he did not use drugs, which the Appeals Council considered in denying the request for review on October 17, 2007. (AR 4, 7.) In the first letter, Plaintiff's primary treating physician, Scott Robinson, M.D., stated:

> I simply want to note that Mr. Thompson has consistently stated from the outset of treatment here that he has never used illegal drugs and that he has never engaged in any form of substance abuse. I have never seen any evidence to suggest that Mr. Thompson was otherwise than honest in discussing this issue.

(AR 423.) The second letter, written by Plaintiff's case manager from the Golden West Transitional Housing Program, stated:

> While at the Golden West Clients are tested randomly for illicit drugs and alcohol. During Mr. Thompson['s] complete term here at the Golden West[, he] has never tested positive for drugs or any mind-altering chemicals.

(AR 424.) The Appeals Council considered these additional letters and affirmed the ALJ's decision. This finding is not supported by substantial evidence.

    Dr. Zuckerman's report stands in stark contrast to the remainder of Plaintiff's medical record, yet the ALJ relied heavily on this report in discounting Plaintiff's credibility. It is unclear why Dr. Zuckerman included in his report that Plaintiff was a heavy drug user, but that assessment simply is not supported by any other evidence in the record. Plaintiff has never tested positive for drug use, even when tested at the very same time that Dr. Zuckerman drafted his report, and he has repeatedly denied using drugs. Rather than discussing the lack of evidence and explaining his reasons for relying on Dr. Zuckerman's report despite it, the ALJ took Dr. Zuckerman's notes as fact, then either ignored evidence to the contrary in the record or turned it against Plaintiff (i.e., the ALJ's conclusion that Plaintiff's denials of drug use were lies shedding negative light on his credibility).

    An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. The ALJ's main reason for rejecting Plaintiff's symptom testimony, that Plaintiff is a dishonest

drug user, is not supported by substantial evidence in the record.[3]

### 2. Plaintiff's Rejection of Treatment

On March 1, 2007, Dr. Jones from Downtown Mental Health Center noted that Plaintiff was not taking his medications as prescribed and that Plaintiff cancelled a scheduled appointment after stating "I don't need treatment." (AR 397-98.) The ALJ concluded that Plaintiff was "not credible because he has not complied with treatment provided to him." (AR 21.) The ALJ also stated, "If the claimant does not believe that he needs mental health treatment, then the filing of this application for disability benefits, with an allegation of disability due to a mental impairment, is less than forthright conduct." (*Id.*)

The ALJ accepted that Plaintiff had bipolar disorder, and that this impairment was "severe" under the Social Security regulations. (AR 16.) Symptoms of bipolar disorder may include euphoria, inflated self-esteem, extreme optimism, and poor judgment.[4] Although there are some conflicting reports in the record as to the extent of Plaintiff's impairments, the record shows Plaintiff has sought and received treatment for mental illness for at least the last several years. Plaintiff's self-diagnosis on that one day in March 2007 is consistent with the recognized symptoms

---

[3] In reaching his decision, the ALJ also stated, "With consideration of the claimant's substance use history, albeit unacknowledged by the claimant, he has not eliminated the possibility that some of his alleged symptoms of a mental impairment may be the result of his substance use." (AR 20.) Neither of the state agency psychiatrists who examined Plaintiff and/or reviewed his medical records opined that substance use caused his mental impairments, nor did Dr. Robinson lend any credence to the idea. Again, Dr. Zuckerman's report, which is flatly contradicted by objective evidence in the record, is the only part of Plaintiff's medical record to provide any support whatsoever for this assertion. The ALJ has identified no other evidence to support his speculation that Plaintiff's symptoms were caused by drug use.

[4] Mayo Clinic, http://www.mayoclinic.com/health/bipolar-disorder/DS00356/DSECTION=symptoms (last visited September 8, 2008).

of his mental illness, particularly given that the record otherwise shows him to be compliant with his medication regimen and actively seeking and participating in treatment both before and after Dr. Jones' report. At no other time did a physician note that Plaintiff declined treatment or failed to take his medication, and in fact the record shows he frequently returned to the clinic for medication refills. Though Plaintiff's actions may raise legitimate questions, the ALJ's decision to discount all of Plaintiff's medical records and symptom testimony based on a notation from this one day is not supported by substantial evidence.

The Court concludes that none of the ALJ's reasons for discounting Plaintiff's credibility are supported by substantial evidence in the record.

**B.   The ALJ Improperly Rejected the Treating Physician's Opinion**

In an evaluation form dated April 3, 2007, Plaintiff's treating psychologist, Dr. Robinson, diagnosed Plaintiff with bipolar disorder and opined:

> Mr. Thompson is currently unable to work as a result of his psychiatric disability. The most significant obstacle to his employment would be his great difficulty relating to other people and in managing his anger in social situations. He has a history of reacting with explosive anger in response to even mild provocations to other people. As a result of this tendency, he would almost certainly be unable to cope with the minor frictions that inevitably arise in interactions with supervisors and coworkers. In addition, the stress of employment would probably result in a worsening of his condition and increase the risk of decompensation, which could

be dangerous both to himself and to his coworkers. (AR 394.) Dr. Robinson further characterized Plaintiff's prognosis as "guarded," noting that his mental illness was longstanding and had worsened in recent years. (AR 395.) Dr. Robinson concluded, "I am hopeful that he may eventually improve, but I do not believe he will be able to return to work within the next year." (*Id.*)

On January 20, 2006, an examining psychiatrist, Ernest A. Bagner III, M.D., diagnosed a mood disorder and opined that Plaintiff would have "mild limitations interacting with supervisors, peers and the public, maintaining concentration and attention and completing simple tasks," and "mild to moderate limitations handling normal stresses at work, completing complex tasks and completing a normal workweek without interruption." (AR 277.) A psychiatric review technique form completed on March 13, 2006, diagnosed Plaintiff with mood disorder, not otherwise specified, and indicated Plaintiff would have mild difficulties maintaining social functioning and maintaining concentration, persistence, or pace, with one or two prior episodes of decompensation. (AR 288, 295.) A mental residual functional capacity assessment of the same date indicated that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions. (AR 299.) The medical consultant, P.M. Balson, concluded, "Claimant can sustain simple repetitive tasks with adequate pace and persistence. Can adapt and relate to coworkers, supervisors and the public." (AR 301.)

In reaching the disability determination, the ALJ gave no weight to Dr. Robinson's opinion and relied instead on the opinions of the state agency psychiatrist and medical consultant. (AR 21-22.) The Court concludes that the ALJ's rejection of Dr. Robinson's opinion was error.

The general rule in this circuit is that, among the three types of

physicians—-(1) treating physicians, i.e., those who treat the claimant; (2) examining physicians, i.e., those who examine but do not treat; and (3) non-examining physicians, i.e., those who neither examine nor treat—-the most weight should be given to the opinion of a treating source. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ should give deference to a treating medical source's opinion as to the nature and severity of an impairment if it is well supported and not inconsistent with other evidence. SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996). This is "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

Even where the treating medical source's opinion is contradicted by the record, the ALJ may only reject that opinion if he or she provides specific and legitimate reasons for doing so that are based on substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ in the present case gave several reasons for disregarding Dr. Robinson's opinions, which include: (1) that Dr. Robinson's opinion was based on Plaintiff's subjective reports of his condition, and Plaintiff was not credible; (2) that Dr. Robinson's failure to uncover Plaintiff's alleged drug use while treating Plaintiff rendered his conclusion unreliable; and (3) that Dr. Robinson acted as an advocate for Plaintiff in obtaining SSI benefits and did not offer a "neutral, medical perspective." (AR 21-22.) These reasons are specific but not legitimate, as they reflect the ALJ's unsupported assumptions regarding Plaintiff's drug use and the ALJ's misapplication of the law.

The ALJ faulted Dr. Robinson for relying on Plaintiff's subjective reports of his behavior and mental condition in rendering his opinion as to Plaintiff's level of impairment, in light of the ALJ's conclusion Plaintiff was not credible. (AR 21.) As discussed above, the ALJ's reasons for discounting Plaintiff's credibility were improper and unsupported by substantial evidence in the record.

Where a physician's opinion is based entirely on a claimant's subjective complaints and have no support of objective evidence in the record, the ALJ may disregard that opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). However, the ALJ may not reject a physician's opinion "where the doctor does not discredit [the claimant's] complaints and supports his ultimate decision with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200 (9th Cir. 2008). While Dr. Robinson obviously relied on Plaintiff's subjective statements in reaching his opinion as to the extent of Plaintiff's disability, Dr. Robinson also noted his own observations in his report: "Mr. Thompson is consistently cooperative and talks freely, although in clinical sessions he sometimes seems detached and oddly unemotional. His eye contact is erratic and his affect is constricted." (AR 393.) Dr. Robinson also noted that Plaintiff previously had been convicted of assault and imprisoned for several months, which is objective evidence suggesting that Plaintiff does indeed have anger-management issues. (AR 392.) That Dr. Robinson also discussed Plaintiff's subjective reports of his mental state does not undermine Dr. Robinson's conclusions as to Plaintiff's limitations. Moreover, subjective statements regarding symptoms are integral to the diagnosis and treatment of psychiatric impairments. Accordingly, the ALJ's rejection of Dr. Robinson's opinion for relying in part on Plaintiff's

subjective reports, particularly given that the ALJ provided only improper justifications for discounting Plaintiff's credibility in any case, was error.

The ALJ's second reason for rejecting Dr. Robinson's opinion, that Dr. Robinson failed to uncover Plaintiff's alleged drug use and incorporate it into his evaluation, is also without merit. Absent substantial evidence that Plaintiff in fact did use drugs and given that almost all evidence in the record actually points to the contrary, the ALJ cannot reject Dr. Robinson's opinion on the basis that he failed to obtain all relevant information in forming his opinion.

Finally, the ALJ rejected Dr. Robinson's opinion because Dr. Robinson "had suggested to the claimant that an evaluation by him would be helpful to the claimant's SSI application" and that Dr. Robinson "asked the claimant questions to elucidate how his psychiatric disability had affected his job-related abilities." (AR 22.) The ALJ concluded that "the evidence from Dr. Robinson [is not] accurate, reliable, or prepared from a neutral medical perspective," and he afforded it no weight. (*Id.*)

The ALJ's rejection of Dr. Robinson's opinion for this reason was improper. In the Ninth Circuit, "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). That Dr. Robinson offered his assistance to Plaintiff during the course of treatment does not support the conclusion that Dr. Robinson's opinions were without merit, nor does it change the fact that the ALJ should afford those opinions significant weight. The ALJ "'may not assume that doctors routinely lie in order to help their patients collect disability benefits.'" *Id.* (quoting *Ratto v. Secretary, Dep't of Health & Human*

14

*Servs.*, 839 F. Supp. 1415, 1426 (D. Or. 1993)). The ALJ identified no evidence of actual improprieties in Dr. Robinson's treatment of Plaintiff. *See id.* The ALJ's rejection of Dr. Robinson's opinion on this basis was error.

**IV.  Award of Benefits**

Upon determining that the Commissioner erred in denying benefits, the Court may remand the case for further proceedings or award benefits. An award of benefits is appropriate where (1) the ALJ improperly rejected relevant evidence in the record; (2) no outstanding issues prevent a disability determination from being made; and (3) the ALJ would be required to award benefits if the improperly rejected evidence were credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)(citations omitted); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (citing *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1998)).

Here, the ALJ improperly rejected Plaintiff's symptom testimony and Dr. Robinson's opinion that Plaintiff was unable to work. If this evidence were credited as true, it is clear that Plaintiff would be considered disabled under the Social Security Act. There being no outstanding issues to resolve through further administrative proceedings, an award of benefits is appropriate.

//
//
//
//
//
//

**V.   Conclusion**

For the reasons stated above, it is **ORDERED** that the case be remanded for an award of benefits. The Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is **DENIED**.

DATED: September 8, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge